## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

**DOROTHEA CORNICK, individually and on behalf of others similarly situated,**

      **Plaintiff,**

        **v.**

**AWARE RECOVERY CARE, INC. and AWARE RECOVERY CARE OF MASSACHUSETTS, LLC,**

      **Defendants.**

**Civil Action No. 3:24-cv-00469-JAM**

### CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Class Action and Collective Action Settlement Agreement ("Agreement") is made and entered into between the Parties to the above-captioned Action, Plaintiff Dorothea Cornick ("Named Plaintiff"), on behalf of herself and as a representative of the Class and Collective of similarly situated employees (as defined below), and Defendants Aware Recovery Care, Inc. and Aware Recovery Care of Massachusetts ("Defendants") (collectively, Named Plaintiff and Defendants are "the Parties").

### I.  CONDITIONAL NATURE OF THIS AGREEMENT

The entirety of this Agreement and all associated exhibits and attachments are made for the sole purpose of settling the above-captioned Action.  This Agreement and the settlement it evidences (the "Settlement") are made in compromise of disputed claims.  Because this Action is being settled in part as a class action pursuant to Federal Rule of Civil Procedure 23, this Settlement must receive preliminary and final approval by the Court.  The settlement of the collective claims under the Fair Labor Standards Act ("FLSA") is also subject to Court approval.  Accordingly, the Parties enter into this Agreement on a conditional basis.  If the Court does not enter the Final

1

Approval Order approving this Agreement or if the proposed Judgment does not become a Final Judgment for any reason, this Agreement shall be null and void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or utilized for any purpose whatsoever, and the negotiation, terms, and execution of this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408 and all other analogous rules of evidence that are applicable.

## II.    <u>DEFINITIONS</u>

The following terms, when used in this Agreement, shall have the following meanings:

**"Action"** means the above-captioned action, entitled *Cornick v. Aware Recovery Inc., et al.*, Case No. 3:24-cv-00469-JAM, pending in the United States District Court for the District of Connecticut.

**"Application for Final Approval"** means the documents and materials to be filed with the Court pursuant to this Agreement, seeking final approval of the Agreement.

**"Attorneys' Fees"** means the amount of money that Class Counsel will petition the Court to award to Class Counsel as part of the Settlement for their representation of the Class Members and Collective Members in the Action in the maximum amount of $283,333.33.

**"Check Cashing Period"** means the 180-day period commencing on the date on which the Individual Settlement Payment Checks are mailed to Qualified Claimants.

**"Claim Bar Date"** means the date that is 60 days from the date of the initial mailing of the Settlement Notices pursuant to Section VIII.B of this Agreement.  The Bar Date is the date by which any Collective Member who wishes to participate in the settlement must return an executed Claim Form, and also the date by which any Class Member who elects not to participate in the Settlement must submit a written and valid Request for Exclusion.

**"Class Counsel"** means the law firm Brown, LLC.

"**Class Data**" means a list of all Class Members and Collective Members, including their names, employee ID numbers, last known mailing addresses, last known telephone numbers (to the extent such information is in Defendants' possession), social security numbers, and the state(s) in which each individual worked.  Class Members' mailing addresses, telephone numbers, and social security numbers shall not be provided to Class Counsel.

"**Class Member**" (individually) and "**Class Members**" and "**Class**" (collectively) means the following individuals: (a) any Client Recovery Advisor ("CRA") who worked in Massachusetts as an employee of Defendant(s) between March 27, 2021 and January 29, 2023; (b) any Care Coordinator ("CC"), including Medical CCs, Clinical CCs, IHWM CCs, and IHWM MAT CCs, who worked in Massachusetts as an employee of Defendant(s) between March 27, 2021 and April 22, 2023; (c) any Family Education Facilitators ("FEF") who worked in Massachusetts as an employee of Defendant(s) between March 27, 2021 and July 11, 2023; (d) any CRA Lead, Medical CC Lead, Clinical CC Lead, MMW, or MAT CC who worked in Massachusetts as an employee of Defendant(s) between March 27, 2021 and December 31, 2023; and (e) Opt-in Plaintiffs who worked in Massachusetts as an employee of Defendant(s).  The determination of who is a Class Member shall be based on Defendants' employment and business records.  All Class Members also are "Collective Members" as defined below.  Defendants represent that there are approximately 254 Class Members.

"**Claims Period**" means collectively the respective time periods stated above in the definition of "Class Member" and below in the definition of "Collective Member" with respect to each category of employees.

"**Collective Member**" (individually) and "**Collective Members**" and "**Collective**" (collectively) means the following individuals: (a)  any Client Recovery Advisor ("CRA") who

worked as employees of Defendant(s) between March 27, 2021 and January 29, 2023; (b) any Care Coordinator ("CC"), including Medical CCs, Clinical CCs, IHWM CCs, and IHWM MAT CCs, who worked for Defendants between March 27, 2021 and April 22, 2023; (c) any Family Education Facilitators ("FEF") who worked for Defendants between March 27, 2021 and July 11, 2023; (d) any CRA Lead, Medical CC Lead, Clinical CC Lead, MMW, or MAT CC who worked for Defendants between March 27, 2021 and December 31, 2023; and (e) Opt-in Plaintiffs who are not Class Members.  The determination of who is a Collective Member based on employees' positions and dates of employment shall be based on Defendants' employment and business records.  The Collective includes all Class Members, plus additional individuals who are Collective Members, but not Class Members, because they did not work for Defendants in Massachusetts during the relevant time period.  Defendants represent that there are approximately 288 Collective Members.

**"Collective Settlement"** means the settlement of Qualified Claimants' Released Collective Claims.

**"Complaint"** means the Collective and Class Action Complaint With Jury Demand filed by Named Plaintiff in the Action, Document Number 2 in the Docket in the Action.

**"Costs"** means Named Plaintiff's and Class Counsel's actual litigation expenses and costs, as documented in Class Counsel's records and as submitted to the Court for approval, in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

**"Court"** means the United States District Court for the District of Connecticut.

**"Days"** means calendar days.

**"Defendants"** means collectively Aware Recovery Care, Inc. and Aware Recovery Care of Massachusetts.

**"Defendants' Counsel"** means Jackson Lewis P.C.

**"Employer Payroll Taxes"** means the taxes and withholdings that Defendants must withhold from employees' compensation pursuant to federal, state, and/or local law arising out of or based on the payment of employment compensation in this Action, including, but not limited to, FICA, FUTA, and SUTA obligations. Defendants shall pay Employer Payroll Taxes separate and in addition to their payment obligations with respect to the Gross Settlement Amount under this Agreement.

**"Final Approval Hearing"** means the hearing before the Court relating to the Application for Final Approval.

**"Final Approval Order"** means the Order entered by the Court after the Final Approval Hearing, approving the terms of the Settlement, including the Releases, authorizing distribution of settlement checks to Qualified Claimants, the Service Award to Named Plaintiff, and Attorneys' Fees and Costs to Class Counsel, and dismissing the Action with prejudice.

**"Date of Final Judgment"** means the latest of the following dates: (a) the date following the deadline for seeking appellate review of the Court's Final Approval Order, if no appeal or request for review is filed; and (b) if an appeal is filed regarding the Court's Final Approval Order, then the date of the final resolution of that appeal (including any requests for rehearing and/or petitions for review) resulting in the final judicial approval of the Agreement. Notwithstanding the foregoing, any proceeding, order, or appeal pertaining solely to the award of Attorneys' Fees or Costs or the Service Award shall not by itself in any way delay or preclude the Judgment from otherwise taking effect on the Date of Final Judgment.

**"Funding Date"** is the date by which Defendants shall deposit the total amount that Defendants are required to pay pursuant to this Agreement. The Funding Date is thirty (30)

calendar days following Defendants' receipt from the Settlement Administrator of electronic wiring instructions and the final amount to be wired, which the Settlement Administrator shall send after the Date of Final Judgment.  If an objection to the Settlement is made but no appeal is filed, the Funding Date is the later of thirty (30) calendar days following Defendants' receipt of electronic wiring instructions and final amount to be wired from the Settlement Administrator or thirty (30) calendar days after the running of the appeal period.  If an appeal is filed, the Funding Date is the later of thirty (30) calendar days following Defendants' receipt of electronic wiring instructions and final amount to be wired from the Settlement Administrator or thirty (30) calendar days after the date the judgment is final and no longer subject to appeal.

**"Gross Settlement Amount" ("GSA")** is the amount that Defendants will be required to pay pursuant to this Agreement, with the sole exceptions of: (a) Employer Payroll Taxes being a separate obligation of Defendants, or (b) if the GSA increases pursuant to Section XII.B.  The Gross Settlement Amount is a maximum total amount of Eight Hundred Fifty Thousand Dollars and Zero Cents ($850,000.00), which includes: (1) all payments to Qualified Claimants, excluding the amount of the Employer Payroll Taxes to be paid by Defendants, (2) all Settlement Administrator Costs, (3) any Service Award, and (4) all Class Counsel's Attorneys' Fees and Costs.

**"Individual Settlement Payment"** means the portion of the Net Settlement Fund allocated to each individual Collective Member, pursuant to this Agreement.

**"Judgment"** means the judgment to be executed and filed by the Court pursuant to this Agreement along with the Final Approval Order.

**"Named Plaintiff"** means Dorothea Cornick.

**"Net Settlement Fund" or "NSF"** means the Gross Settlement Amount less the: (1) Settlement Administrator Costs; (2) Court-approved Service Award; and (3) Court-approved Attorneys' Fees and Costs to be paid to Class Counsel.

**"Notice of Settlement"** means collectively the Court-approved Class Notice and Collective Notice, to be authorized in the Preliminary Approval Order, substantially in the form set forth as Exhibits 1 and 2 hereto.

**"Objector"** means a Class Member who properly and timely files an Objection to the Settlement.

**"Opt-In Plaintiffs"** means the individuals who have filed Consent to Join forms with the Court to become Plaintiffs in the Action as of the date of execution of this Agreement.

**"Participating Class Members"** means all Class Members other than those who timely and properly elect not to participate in the Rule 23 Settlement by timely submitting a written and valid Request for Exclusion.

**"Qualified Claimants"** means the Named Plaintiff, all Opt-in Plaintiffs, and all Collective Members who timely return to the Administrator a completed and executed Claim Form, and thereby opt in to the Collective for settlement purposes and release Defendants from wage claims.

**"Parties"** means Named Plaintiff and Defendants (each a "Party").

**"Preliminary Approval Order"** means the Order entered by the Court: (i) granting preliminary approval of the Settlement; (ii) certifying the Class pursuant to Federal Rule 23, appointing Class Counsel, appointing Named Plaintiff as the Class Representative, and appointing the Settlement Administrator, all for settlement purposes only; (iii) certifying the FLSA Collective under 29 U.S.C. § 216(b) for settlement purposes only; (iv) approving the Notice of Settlement; (v) directing the distribution of the Notice of Settlement documents to Class Members and

Collective Members; (vi) setting dates to carry out the terms of the Settlement, including the date of the Final Approval Hearing to determine whether the proposed settlement, including without limitation payment of attorneys' fees, costs, and the Service Award, should be finally approved as fair and reasonable.

**"Qualified Settlement Fund" or "QSF"** means the account established by the Settlement Administrator into which Defendants shall deposit the payments they are obligated to make and from which the Settlement Administrator shall make all payments required by the Settlement. The account shall be opened and administered by the Settlement Administrator as a qualified settlement fund under Section 468B of the IRC and Treas. Reg. § 1.468B-1 et seq. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.

**"Released Class Claims"** means any and all wage claims, rights, demands, liabilities and causes of action that any Participating Class Member has against the Releasees under Massachusetts Wage Laws arising at any time through the date of final approval of the settlement, including, without limitation, claims for unpaid minimum wages, straight time wages, overtime wages, and any and all associated wage damages, liquidated damages, treble damages, enhanced damages, attorneys' fees, costs, and interest related to or arising from the claims that were made or could have been made in the Complaint.

**"Released Collective Claims"** means any and all wage claims, rights, demands, liabilities and causes of action that any Qualified Claimant has against the Releasees arising at any time through the date on which the Qualified Claimant signs the Claim Form, including, without limitation, claims for unpaid minimum wages, straight time wages, overtime wages, and any and all associated wage damages, liquidated damages, treble damages, enhanced damages, attorneys'

fees, costs, and interest related to or arising from the claims, whether founded on state, federal or local law, including any such claims under the FLSA and state wage laws.    The Released Collective Claims expressly include, but are not limited to, state and local wage payment and wage assignment statutes, and shall be construed broadly to include the maximum extent of the term "wage claims," including any claims related to the amount or timing of any payment of wages.

**"Releasees"** means Defendants and their former and current parents, subsidiaries, and affiliated corporations and entities, and their respective officers, directors, employees, partners, shareholders, agents, insurers, employee benefit plans, and any other successors, assigns, or legal representatives.

**"Request for Exclusion"** means a written notice from a Class Member to the Settlement Administrator requesting exclusion from the Rule 23 Settlement in accordance with the process and deadlines described in this Agreement.

**"Rule 23 Settlement"** means the settlement, pursuant to Federal Rule of Civil Procedure 23, of Participating Class Members' Released Class Claims.

**"Service Award"** means the award that the Court approves to be paid to Named Plaintiff in the amount of up to Forty Thousand Dollars ($40,000.00).

**"Settlement Agreement"** or **"Agreement"** means this Class Action and Collective Action Settlement Agreement.

**"Settlement Administrator"** means the entity approved by the Court to administer the Settlement and perform the duties set forth in Section VI of this Agreement.

**"Settlement Administrator Costs"** shall mean the amount approved by the Court to be paid to the Settlement Administrator as described in Section 8.2.  Unless good cause is shown,

Settlement Administrator Costs shall not exceed the estimate of the Settlement Administrator to administer the Settlement, which is estimated to be $7,017.77.

**"Settlement Effective Date"** means the later of (a) the day following the expiration of the time to appeal the Final Judgment, if no appeal of the Final Judgment is filed; or (b) the date on which all appeals are resolved in favor of the Settlement, if any appeals of the Final Judgment are filed.

## III.    RECITALS

A.    On March 27, 2024, Named Plaintiff filed the Complaint in the Court, asserting claims under the FLSA and Massachusetts state wage laws ("Massachusetts Wage Laws"), alleging that Named Plaintiff, Collective Members, and Class Members were misclassified as exempt employees and not paid overtime wages allegedly required under the FLSA and Massachusetts Wage Laws, as applicable.  The Complaint further asserted that, after Named Plaintiff, Collective Members, and Class Members were reclassified as non-exempt, they were not paid wages for all hours worked.  The Complaint asserted the FLSA claims as a putative collective action under the FLSA, and asserted the Massachusetts Wage Laws claims as a putative class action under Federal Rule of Civil Procedure 23.

B.    The Parties agreed to stay litigation of the Action in order to engage in mediation.

C.    Prior to the mediation sessions, Defendants' Counsel shared with Class Counsel a substantial amount of wage and hour data relating to the Collective Members and Class Members, which provided Class Counsel with sufficient information to assess the merits of the claims pled and alleged in the Complaint and the value of Named Plaintiff's, Collective Members', and Class Members' claims.

D.     On September 11, 2024 the Parties engaged in a private, arm's-length mediation with Marc Isserles, an experienced JAMS mediator with extensive knowledge of wage and hour laws and collective and class actions.  The case did not settle at the first mediation.

E.     Subsequently, on February 4, 2025, the Parties engaged in a second, private, arm's-length mediation with Marc Isserles.  The case did not settle at the second mediation.

F.     Following the second mediation session on February 4, 2025, the Parties continued negotiating through Marc Isserles and reached an agreement on the essential terms of a settlement to resolve the Action.  This Agreement formalizes the full terms of the Parties' settlement agreement.

G.     Defendants deny all claims asserted in the Action as to liability, damages, penalties, interest, fees, restitution, and all other forms of relief, including the class and collective allegations asserted in the Action.  Defendants agreed to resolve the Action via this Agreement.  However, to the extent this Agreement is deemed void or the Final Judgment does not occur, Defendants do not waive, and expressly reserve, all rights to challenge all claims and allegations in the Action based upon all procedural, factual, and substantive grounds, as well as all rights to assert any and all other potential defenses including, but not limited to, that class and collective certification are not appropriate for the alleged claims.  Class Counsel and Named Plaintiff agree that Defendants retain and reserve these rights, and expressly waive any argument that, based upon this Agreement, Defendants cannot assert any potential defenses if the Action were to proceed.

## IV.     BENEFITS OF THE SETTLEMENT TO THE COLLECTIVE, CLASS, AND DEFENDANTS

A.     Class Counsel have diligently pursued an investigation of the claims against Defendants.  Based on their own independent investigation and evaluation, Class Counsel believe

that settlement with Defendants for the consideration and on the terms set forth in this Agreement is fair, reasonable, and adequate, and is in the best interest of the Class and Collective in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, the factual and legal defenses asserted by Defendants, and the risk that judgment could be granted in favor of Defendants and/or that the Class or Collective would not be certified. In addition to the above, Class Counsel weighed the monetary benefit provided by the Settlement to the Class and Collective against the expenses and length of continued proceedings that would be necessary to prosecute the Action through further litigation, trial, and possible appeals. On these bases, Class Counsel has determined that the Settlement set forth in this Agreement is in the best interests of the Class and Collective.

B.     Defendants and Defendants' Counsel also agree that the Settlement is fair and reasonable given the uncertainty and risks and costs of further litigation because further litigation of the Action could be protracted, distracting, and expensive, and it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement. Defendants therefore determined that it is desirable and beneficial to settle the Action in the manner and upon the terms and conditions set forth in this Agreement.

C.     It is the Parties' intention that this Settlement shall constitute a full and complete settlement and release of Named Plaintiff's claims against any and all of the Releasees, and all of the Participating Class Members' Released Class Claims and Qualified Claimants' Released Collective Claims against any and all of the Releasees.

12

## V.    CERTIFICATION OF THE COLLECTIVE AND CLASS FOR SETTLEMENT PURPOSES ONLY

A.    Solely for settlement purposes to settle the Action, the Parties conditionally stipulate that the prerequisites for establishing certification of a collective action pursuant to 29 U.S.C. § 216(b) have been met, and that the Collective includes all of the following Collective Members: (a) all CRAs who worked as employees of Defendant(s) between March 27, 2021 and January 29, 2023; (b) all CCs, including Medical CCs, Clinical CCs, IHWM CCs, and IHWM MAT CCs, who worked as employees of Defendant(s) between March 27, 2021 and April 22, 2023; (c) all FEFs who worked as employees of Defendant(s) between March 27, 2021 and July 11, 2023; (d) all CRA Leads, Medical CC Leads, Clinical CC Leads, MMWs, and MAT CCs who worked as employees of Defendant(s) between March 27, 2021 and December 31, 2023.  The determination of who is a Collective Member shall be based on Defendants' employment and business records.

B.    Solely for settlement purposes to settle the Action, the Parties agree that a Class shall be certified under Federal Rule 23 that includes all of the following Class Members: (a) all CRAs who worked in Massachusetts as employees of Defendant(s) between March 27, 2021 and January 29, 2023; (b) all CCs, including Medical CCs, Clinical CCs, IHWM CCs, and IHWM MAT CCs, who worked in Massachusetts as employees of Defendant(s)  between March 27, 2021 and April 22, 2023; (c) all FEFs who worked in Massachusetts as employees of Defendant(s) between March 27, 2021 and July 11, 2023; (d) all CRA Leads, Medical CC Leads, Clinical CC Leads, MMWs, and MAT CCs who worked in Massachusetts as employees of Defendant(s) between March 27, 2021 and December 31, 2023.  The determination of who is a Class Member shall be based on Defendants' employment and business records.  For purposes of settling the

Action, the Parties conditionally stipulate that the prerequisites for establishing class certification under Federal Rule 23 have been met with respect to the Class.

C.      The Agreement is contingent upon the approval and certification by the Court, for settlement purposes only, of the Collective and the Class under Federal Rule 23.  If the Court does not grant either the Preliminary Approval or Final Approval of the Settlement, Defendants do not waive, and instead expressly reserve, their rights to challenge the admissibility of this Agreement or the propriety of certification of the Collective and the Class for any purpose, as if this Agreement had not been agreed or submitted to the Court by the Parties.

## VI.    **SETTLEMENT ADMINISTRATOR**

A.      The Parties have agreed to use CAC Services Group, LLC as the Settlement Administrator.

B.      The Settlement Administrator Costs, in the estimated amount of $7,017.77, shall be paid from the Gross Settlement Amount.

C.      Responsibilities of the Settlement Administrator.  The Settlement Administrator shall be responsible for carrying out all tasks necessary to effectuate the Settlement, including but not limited to:

- Receiving and processing the contact information of the Collective Members and Class Members and maintaining the confidentiality of such information;

- Printing and mailing all mailings and notices to Collective Members and Class Members;

- Notifying the Parties of any objections or Requests For Exclusion;

- Receiving and processing the settlement funds from Defendants;

- Distributing funds as approved by the Court for payments of the Settlement Administrator Costs, Service Award, and Attorneys' Fees and Plaintiff's Costs;

14

- Distributing payments to Qualified Claimants;

- Effecting all mandatory deductions and withholdings from the payments to Qualified Claimants; and

- Collecting the employer's portion of payroll taxes and paying all required taxes to the appropriate authorities.

- Issuing W-2 and 1099 Forms, as appropriate, for all amounts paid pursuant to this Agreement, in accordance with the terms of this Agreement;

- Establishing a Qualified Settlement Fund and Qualified Settlement Fund account, and determining and finalizing the calculations of Individual Settlement Payments and tax withholding amounts for the Qualified Claimants;

- Copying counsel for the Parties on material correspondence and promptly notifying counsel for the Parties of any material requests or communications made by any Collective Member or Class Member;

- Receiving and reviewing the Consent to Join and Release Forms submitted by Putative Collective Members to determine eligibility for payment;

- Creating, maintaining, and securing a settlement website, which shall include access to downloadable versions of the Class and Collective Notices and Claim Form(s), and shall allow Class Members and Collective Members to submit executed Claim Forms electronically through a secure online portal; Ascertaining current address and addressee information for each Notice Packet returned as undeliverable;

- Receiving and processing any objections or Requests For Exclusion;

- Referring to Class Counsel all inquiries by Collective Members that the Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified herein;

- Responding to inquiries of Class Counsel or Defendants' Counsel;

- Apprising counsel for the Parties of the activities of the Settlement Administrator;

- Maintaining adequate records of its activities, including the date of the mailing of the Notice Packets and receipt of Consent to Join and Release Forms, returned mail and other communications and attempted written or electronic communications with the Collective Members;

- Confirming in writing to the Parties' Counsel its completion of the administration of the settlement and retaining copies of all endorsed settlement checks;

15

- Timely responding to communications from the Settling Parties or their counsel; and such other tasks as called for by this Agreement, ordered by the Court, or as mutually agreed upon by the Parties.

D.  <u>Access to the Settlement Administrator</u>.  The Parties will have equal access to the Settlement Administrator throughout the settlement administration period.  The Parties shall provide the Settlement Administrator with the information necessary to calculate the Individual Settlement Payments, and both Parties shall reasonably assist the Settlement Administrator in locating Class and Collective Members.

E.  <u>Disputes</u>.  All Parties shall have the right to review and approve all calculations of the Settlement Administrator and can raise any disputes with the calculations to the Settlement Administrator and the other Party for any necessary revisions, consistent with the terms of this Agreement.  Any disputes regarding the Settlement Administrator's services, including the calculation of any Individual Settlement Payment, shall be by raised by the disputing Party to the other Party.  To the extent any disputes cannot be resolved by the Parties, the Parties shall submit such disputes to Mediator Marc Isserles for resolution, and his decisions will be final and binding.

## VII.  <u>SETTLEMENT PAYMENTS</u>

### A.  <u>Gross Settlement Amount</u>

1.  In consideration for the dismissal with prejudice of the Action and Participating Class Members' and Qualified Claimants' releases of claims, Defendants shall pay a maximum Gross Settlement Amount of Eight Hundred and Fifty Thousand Dollars and Zero Cents ($850,000.00) to resolve the Action on a Class and Collective action basis, as described herein. The GSA includes: (a) Attorneys' Fees in the maximum amount of $283,333.33 (one third of the GSA); (b) Costs in the amount of $15,000; (c) Settlement Administrator Costs not to exceed $7,017.77; (d) a Service Award to Named Plaintiff not to exceed $40,000; and (e) the amounts

16

payable from the Net Settlement Fund to Qualified Claimants.  The Gross Settlement Amount is the maximum amount that Defendants will be required to pay pursuant to this Agreement, with the sole exception that Defendants shall pay Employer Payroll Taxes separately from, and in addition to, the Gross Settlement Amount.

2.      <u>Unclaimed Funds</u>.  All undistributed, unclaimed, and/or unpaid amounts from the GSA, after completion of the settlement process, as described in this Agreement, shall be retained and/or revert by Defendants, unless otherwise indicated.

**B.      <u>Service Award</u>**

1.      In return for services rendered to Class and Collective Members, Named Plaintiff will apply to the Court to receive up to Forty Thousand Dollars ($40,000.00) as a Service Award to be paid from the GSA.  Defendants will not oppose Named Plaintiff's request for approval of a Service Award.

2.      Named Plaintiff's request for approval of a Service Award is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Action.  The outcome of the Court's ruling whether to approve Named Plaintiff's application for a Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Preliminary or Final Approval or the fairness or reasonableness of this Settlement.  Any amount of the Service Award not finally approved by the Court will be retained by Defendants become part of the Net Settlement Fund to be distributed to Qualified Claimants.

3.      In exchange for the Service Award, Named Plaintiff shall sign this Agreement and thereby execute and agree to the General Release described in Section IX.C

releasing the Releasees from any and all claims relating to any action, event, occurrence or omission as of the date that she signs the Agreement.

4.    The Court-approved Service Award shall be paid to Named Plaintiff and reported to her as 1099 non-wage income.

C.    **Class Counsel's Attorneys' Fees and Costs**

1.    At the Final Approval Hearing and via the Motion for Final Approval, Class Counsel will request approval from the Court for an award of Attorneys' Fees in the maximum amount of one third of the GSA ($283,333.33), plus Costs in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).  Defendants will not oppose Class Counsel's request for approval of Attorneys' Fees and Costs, including not opposing any appeal or request for reconsideration if the petition is denied or modified by the Court.

2.    The substance of Class Counsel's request for Attorneys' Fees and Costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action.  The outcome of the Court's ruling whether to approve Class Counsel's application for fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Preliminary Approval or Motion for Final Approval.  Any amount not finally approved by the Court will become part of the Net Settlement Fund to be distributed to Qualified Claimants.

D.    **Calculation of Settlement Payments**

1.    Each Collective Member's and Class Member's proportionate share of the Net Settlement Fund shall be allocated in an amount proportional to the Collective Member's and Class Member's damages for alleged underpayment of wages.  Class Counsel shall prepare a proposed allocation chart, subject to the approval of Defendants' Counsel, who shall have input

on the proposed allocation chart and underlying formulas. Counsel for the Parties shall confer regarding any disputes pertaining to the allocations. Defendants' Counsel shall not unreasonably withhold approval of the proposed allocation chart. To the extent any disputes cannot be resolved by the Parties, the Parties shall submit such disputes to Mediator Marc Isserles for resolution, and his decisions will be final and binding.

2.      If an individual Collective Member's or Class Member's proportionate share of the Net Settlement Fund, as calculated pursuant to Section VII.D.1, is less than Twenty-Five Dollars ($25.00), the amount shall be adjusted to be Twenty-Five Dollars ($25.00) ("True-Ups"), such that each Collective Member and Class Member will be allocated at least the minimum amount of Twenty-Five Dollars ($25.00) as consideration of his/her release of claims. The Individual Settlement Payment amounts of Collective Members and Class Members that are above Twenty-Five Dollars ($25.00), based on the calculations pursuant to pursuant to Section VII.D.1, shall be proportionately reduced to account for the True-Ups.

3.      <u>No Effect On Employee Benefits</u>. The Individual Settlement Payments and Service Award shall not be considered to be pensionable earnings and shall not have any effect on the eligibility for, or calculation of, any of the employee benefits (e.g., 401(k) plans, retirement plans, etc.) of Named Plaintiff, Collective Members, or Class Members. The Parties agree that any Individual Settlement Payments or Service Award paid under the terms of this Agreement do not represent any modification of any Collective Member's previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare benefit plan sponsored by Defendants. Further, any Individual Settlement Payments and Service Award paid to former employees hereunder shall not be considered "compensation" in any year for

purposes of determining eligibility for, or benefit accrual within, an employee pension benefit plan or employee welfare benefit plan sponsored by Defendants.

## VIII.   NOTICE TO COLLECTIVE AND CLASS AND SETTLEMENT PROCEDURE

A.     <u>Preliminary Approval.</u>  Class Counsel shall submit to the Court this Agreement, and the exhibits thereto, to seek the Court's preliminary approval of this Agreement via the issuance of a Preliminary Approval Order.  Class Counsel will prepare and file the Preliminary Approval motion papers, but will send the draft Preliminary Approval motion papers and proposed Preliminary Approval Order to Defendants' Counsel for their review.   Class Counsel will give Defendants' Counsel two (2) weeks to review and suggest reasonable revisions.  The Parties will confer in good faith on any disagreements regarding proposed revisions before filing.

B.     <u>Notice of Settlement</u>

1.     Within twenty (20) days following the date of the Preliminary Approval Order, Defendants will send to the Settlement Administrator the Class Data.

2.     Upon receipt of the Class Data, the Settlement Administrator shall check the names of Class Members and Collective Members with the U.S. Postal Service National Change of Address Database and update any non-current addresses with any new information found regarding the location of those Class Members and Collective Members.  The Settlement Administrator will update Class Members' and Collective Members' new contact information found, pursuant to its obligations in this Section or based on information provided by Class Members and Collective Members during the claims process.  The Class Data shall be used by the Settlement Administrator solely for the purpose of administering the Settlement.  The Class Data shall be kept confidential by the Settlement Administrator.

3.     Within fourteen (14) days of receiving the Class Data from Defendants, the Settlement Administrator will send via first class mail the Notices of Settlement approved by the Court to the Class Members and Collective Members, respectively, using the Class Data that Defendants provided to the Settlement Administrator, as updated by the Settlement Administrator pursuant to Section VIII.B.2 above. Each mailed Notice Packet shall include a prepaid return envelope addressed to the Settlement Administrator to facilitate submission of the executed Claim Form.

4.     If any Notices of Settlement are returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall run a skip-trace to attempt to ascertain the current address of the Class Members or Collective Member.  If such address is ascertained, the Settlement Administrator shall re-mail the Notice of Settlement within seven (7) days of ascertaining the new address.  If multiple alternative addresses are obtained for a Class Member or Collective Member, the Settlement Administrator shall send the Notice of Settlement to up to three (3) alternative addresses found.

5.     There shall be two different Notices of Settlement: one that shall be sent to Collective Members who are not Class Members (the "Collective Notice"), attached hereto as Exhibit 1, and one that shall be sent to Class Members (the "Class Notice"), attached hereto as Exhibit 2.

6.     <u>Collective Notice</u>

a.     The Collective Notice, attached hereto as Exhibit 1, shall inform each Collective Member who is not a Class Member that, in order to receive any monetary proceeds of the settlement, he/she must complete, execute, and return to the Settlement Administrator an executed original Claim Form, attached hereto within Exhibit 1.

b.      To be eligible to receive an Individual Settlement Payment, a Collective Member's executed Claim Form must be postmarked, or received by mail, email, facsimile, or electronic submission through the settlement website by the Settlement Administrator within sixty (60) days after the date on which the Notice Packets were initially mailed (the "Claim Bar Date").  By executing the Claim Form attached hereto as Exhibit 2, Collective Members shall release the Releasees of all Released Collective Claims.

c.      Collective Members who timely return an executed Claim Form to the Settlement Administrator are "Qualified Claimants" and shall be entitled to receive an Individual Settlement Payment.

d.      Thirty (30) days after the initial mailing of the Collective Notice, the Settlement Administrator shall distribute a reminder postcard to any Collective Member who has not returned a Claim Form. The reminder shall be sent via First Class U.S. Mail.

7.      Notice to Class Members ("Class Notice").

a.      The Class Notice, attached hereto as Exhibit 2, shall inform each Class Member that, in order to receive any monetary proceeds of the settlement, he/she must complete, execute, and return to the Settlement Administrator an executed original Claim Form, attached hereto within Exhibit 2.  The Class Notice shall also inform each Class Member of the procedures and deadlines to object to or opt out of the Class settlement, as explained below.

b.      To be eligible to receive an Individual Settlement Payment, a Class Member's executed Claim Form must be postmarked, or received by the Settlement Administrator by mail, email, facsimile, or submitted electronically through the Settlement Administrator's website, within sixty (60) days after the date on which the Notice Packets were initially mailed

(the "Claim Bar Date").  By executing the Claim Form attached hereto as Exhibit 2, Class Members shall release the Releasees of all Released Collective Claims.

       c.     The Class Members who timely return an executed Claim Form to the Settlement Administrator are "Qualified Claimants" and shall be entitled to receive an Individual Settlement Payment.  Any Class Member who timely returns an executed Claim Form to the Settlement Administrator and becomes a "Qualified Claimant" waives his/her right, and shall not be eligible to, either to file an objection to the Settlement or opt out of the Settlement.

       d.     Class Members, except Named Plaintiff, will have sixty (60) days from the date of mailing the Class Notices within which to file an Objection to the Settlement.  To object, a Class Member must send to the Settlement Administrator a written objection as described in the Class Notice, attached hereto as Exhibit 2, and provide notice of any intent to appear at the Final Approval Hearing. Named Plaintiff cannot object to the Settlement.  Named Plaintiff and Class Counsel agree that they will not solicit, encourage, or advise any individual to object to the Settlement.

       e.     Class Members, except Named Plaintiff, will have sixty (60) days from the date of mailing the Class Notices within which to opt out and be excluded from the Settlement.  To opt out, a Class Member must submit a written request to opt out ("Request for Exclusion") to the Settlement Administrator within the 60-day deadline.  A Class Member who submits a valid and timely Request for Exclusion will not be a Qualified Claimant, will not participate in or be bound by the Settlement and the Judgment, and will not receive an Individual Settlement Payment.  Any Class Member who does not submit a timely Request for Exclusion shall be a Participating Class Member and shall be release Defendants from his/her Released Class

Claims.  Named Plaintiff and Class Counsel agree that they will not solicit, encourage, or advise any individual to opt out of and be excluded from the Settlement.

       f.       Written Requests for Exclusion that are post-marked after the 60-day deadline will be rejected.  A Class Member who submits an untimely Request for Exclusion shall be a Participating Class Member and shall release Defendants from his/her Released Class Claims, unless the Court orders that the Request for Exclusion is valid.

       g.       Thirty (30) days after the initial mailing of the Class Notice, the Settlement Administrator shall distribute a reminder postcard via First Class U.S. Mail to any Class Member who has not returned either a Claim Form, Written Request for Exclusion, or an Objection.

       8.       <u>Final Approval</u>

       a.       Prior to the Final Approval Hearing, Named Plaintiff will move the Court for entry of the Order of Final Approval and associated entry of Judgment that: (a) finally approves the Rule 23 Settlement as fair and adequate; (b) releases and bars any further Released Class Claims by Participating Class Members; (c) approves the Collective settlement and Qualified Claimants' releases of Released Collective Claims; (d) approves Class Counsel's application for an award of Attorneys' Fees and Costs to be paid from the GSA; (e) approves Named Plaintiff's application for a Service Award to be paid from the GSA; and (f) approves the payment of Settlement Administrator Costs to be paid from the GSA.

       b.       The Parties and their counsel shall make all reasonable efforts to secure entry of the Order of Final Approval and Judgment.  Class Counsel shall draft the Motion for Final Approval and proposed Order of Final Approval and shall send the drafts to Defendants' Counsel for review.  Class Counsel shall give Defendants' Counsel two (2) weeks to review and

suggest reasonable revisions (with the Parties to confer in good faith on proposed revisions) before their filing with the Court in connection with the Final Approval Hearing.

        c.    Prior to the Final Approval Hearing, concurrent with or prior to the filing of the Motion for Final Approval, Class Counsel shall file a motion requesting Court approval of the Attorneys' Fees and Costs and the proposed Service Award to the Named Plaintiff as set forth in this Agreement. Named Plaintiff and Class Counsel agree that they shall be solely responsible for justifying to the Court the amount of the Service Award and Attorneys' Fees and Costs, and they agree to submit the necessary materials to the Court to justify these payments and their amounts. Defendants will not oppose the amount of the Service Award and Attorneys' Fees and Costs sought, as long as they are consistent with this Agreement. If the Court (or any appellate court) awards less than the amount requested for Attorneys' Fees and/or Costs, or less than the amount requested for the Service Award, only the awarded amounts shall be paid and shall constitute satisfaction of the obligations of Defendants under this Agreement. The unawarded amounts shall be added to the Net Settlement Fund from which the Individual Settlement Payments will be calculated and paid.

        9.    <u>Funding and Distribution of the Settlement.</u>

        a.    Within seven (7) days after the Date of Final Judgment, the Settlement Administrator shall send to Defendants' Counsel electronic wiring instructions and confirmation of the total amount required to be wired to the Qualified Settlement Fund in order to fund all payments required pursuant to this Agreement, including the payments for Attorneys' Fees and Costs approved by the Court, the Service Award approved by the Court, the Settlement Administrator Costs approved by the Court, the amounts due to fund all Individual Settlement Payments to Qualified Claimants, and the amount due for Employer Payroll Taxes.

b.      By the Funding Date, as defined in Section II, Defendants shall pay into the QSF the amount required to fund all payments required pursuant to this Agreement.

c.      Within seven (7) days after Defendants fund the QSF, the Settlement Administrator shall pay the Court-approved Attorneys' Fees and Costs to Class Counsel.  Class Counsel shall provide to the Settlement Administrator an executed IRS Form W-9 within three (3) days after the Funding Date.  The payments for Court-approved Attorneys' Fees and Costs to Class Counsel shall not be made until Class Counsel has provided the Settlement Administrator an executed IRS Form W-9.  Notwithstanding, if as of the Funding Date, there is any ongoing proceeding or appeal pertaining solely to the award of Court-approved Attorneys' Fees and/or Costs to Class Counsel, then such payment will be delayed until fourteen (14) days after the entry of a final non-appealable ruling and/or judgment concerning Court-approved Attorneys' Fees and/or Costs to Class Counsel.

d.      Within seven (7) days after Defendants fund the QSF, the Settlement Administrator shall send a check by mail for the Court-approved Service Award directly to the Named Plaintiff, provided that the Named Plaintiff has signed this Agreement and waived claims against the Releasees via the General Release in this Agreement.  Named Plaintiff shall provide the Settlement Administrator an executed IRS Form W-9 within three (3) days after the Funding Date.  The payments for the Court-approved Service Award to Named Plaintiff shall not be made until Named Plaintiff has provided the Settlement Administrator an executed IRS Form W-9.  Notwithstanding, if as of the Funding Date, there is any ongoing proceeding or appeal pertaining solely to the Court-approved Service Award to the Named Plaintiff, then such payment will be delayed until fourteen (14) calendar days after the entry of a final non-appealable ruling and/or judgment concerning the Court-approved Service Award.

e.    Within fourteen (14) days after Defendants fund the QSF, the Settlement Administrator shall issue and mail Individual Settlement Payments to Qualified Claimants in the form of checks, which shall become null and void if not deposited within the 180-day Check Cashing Period.  Qualified Claimants who fail to cash their check within the 180-day Check Cashing Period will still be bound by the Settlement, including their releases of claims pursuant to this Agreement.

f.    <u>Unclaimed Funds</u>.  Seven (7) days after the expiration of the Check Cashing Period, any portion of the Gross Settlement Amount not distributed as per the terms hereof, including any Individual Settlement Payment checks not cashed before the expiration of the Check Cashing Period, shall revert to Defendants.  The Settlement Administrator shall wire all such funds to Defendants within ten (10) days after the expiration of the Check Cashing Period.

## IX.    <u>RELEASES OF CLAIMS</u>

A.    <u>Qualified Claimants' Releases</u>.  Conditioned upon the Court's approval of the Settlement, and in exchange for the monetary and other consideration recited in this Agreement, each Qualified Claimant shall waive, release, and forever discharge Defendants and all of the Releasees from any and all Released Collective Claims, as defined above.

B.    <u>Participating Class Members' Releases</u>.  By operation of the entry of the Final Approval Order, each Participating Class Member, on behalf of him/herself and on behalf of his/her respective, current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Defendants and all Releasees from all any and all Released Class Claims as defined above.

C.    <u>Named Plaintiff's Release Of Claims</u>.  In exchange for the monetary and other consideration recited in this Agreement, include the Court-approved Service Award, Named

Plaintiff Dorothea Cornick, on behalf of herself and her heirs, personal representatives, and assigns, by signing and executing this Agreement, hereby waives, releases, and forever discharges Defendants and the "Releasees from any and all claims, causes of action, or demands of any kind whatsoever, whether known or unknown and whether specifically asserted or not, which accrued at any time through the date Named Plaintiff signs this Agreement.  This general release includes, but is not limited to, all claims arising out of or relating to Named Plaintiff's employment with or work for Defendants and/or the termination thereof; all wage and hour claims under any federal, state, or local law, including but not limited to the FLSA; Massachusetts Wage Laws;  all state and local wage statutes, regulations, laws, and ordinances, including all claims for unpaid minimum wages, straight time wages, overtime wages, any claims related to the amount or timing of any payment of wages, state and local wage payment and collection and wage assignment statutes, and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses; all claims for unlawful discrimination or harassment, including but not limited to claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, or the Americans with Disabilities Act; all claims for breach of any express or implied contracts or covenants of good faith; all claims for wrongful discharge; any and all common law claims for any type of relief; and all claims for any type of equitable relief.  This is a general release of claims to be construed in the broadest possible manner to include a release of any and all claims against Defendants and all Releasees.

## X.    <u>TAX CHARACTERIZATION OF SETTLEMENT PAYMENTS</u>

A.    For tax purposes, Fifty Percent (50%) of Individual Settlement Payments to Participating Collective Members will be treated as W-2 wage payments, and Fifty Percent (50%) of such payments will be treated as 1099 non-wage income representing payment of liquidated damages and interest.

B.      Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as liquidated damages and interest shall be made without any withholdings and shall be reported to the IRS and the payee, as required by law, under the payee's name and social security number on an IRS Form 1099-MISC as other income.

C.      Payment of Attorneys' Fees and Costs shall be made without withholding.  Class Counsel must submit W-9 forms to the Settlement Administrator before such payments are made. The Settlement Administrator shall issue to Class Counsel a Form 1099 for these payments.

D.      Payment of a Service Award to Named Plaintiff will be treated and reported as 1099 non-wage income.

## XI.    LIMITED PUBLICITY

As part of the Settlement, Plaintiff and Class Counsel agree not to cause to be publicized or to directly or indirectly initiate any publicity in any type of internet posting (including on Class Counsel's website) or in any mass or social media posting relating to the Action or this Settlement. In response to any media inquiry, Class Counsel may respond that the matter has been resolved based on the terms in this Agreement as filed with the Court and that they believe it is a fair, adequate and reasonable resolution.  This provision does not apply to any publications ordered by the Court or any legal obligations of Class Counsel.

## XII.   TERMINATION OF SETTLEMENT AGREEMENT

A.      Settlement Agreement Conditioned On Court Approval.

29

1.      This Agreement is expressly contingent on obtaining final Court approval of the Settlement and the dismissal with prejudice of the Action.  This Agreement is not contingent upon the Court's approval of Class Counsel's application for Attorneys' Fees and Costs and/or the Service Award sought.

2.      If the Court does not finally approve the Settlement, then the Agreement shall be null and void *ab initio*, and the Parties will revert to their pre-mediation positions, and the case may move forward on that basis.

3.      If the Court grants Preliminary Approval, but not Final Approval, the Settlement Administrator will issue a Court-approved notice to Participating Collective Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made, and no releases of claims shall be effective.  Such notice shall be sent by the Settlement Administrator via First-Class United States Mail.

4.      If the Court declines to enter the Preliminary Approval Order or the Final Approval Order, the Parties agree to work together in an effort to resolve any issues that the Court identified in an attempt to reach a modified agreement to resubmit to the Court for approval.  The Parties may jointly or independently seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form requested, or the Parties may seek approval of a renegotiated settlement.

B.      <u>Grounds for Revision to Settlement Terms.</u>  Defendants represent that there are approximately 284 Collective Members.  If the number of Collective Members increases by more than 10% for any reason prior to Preliminary Approval, the amount of the NSF shall increase by a proportional amount for each additional workweek of claims of each such additional Collective Member above the 10% threshold.  If the number of Collective Members increases by any number

up to 10%, all terms of this Agreement shall remain the same, including the amount of the NSF, and the additional Collective Members will be part of the Collective and shall receive Individual Settlement Payments from the NSF.

## XIII.  **MISCELLANEOUS PROVISIONS**

A.    Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.

B.    The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Agreement.  Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other action as may reasonably be necessary to fulfill the terms of this Agreement.  The Parties to this Agreement shall exercise reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement and the terms set forth herein.

C.    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the date of receipt by email or first-class mail, addressed as follows:

**To the Class:**

Nicholas Conlon
Brown, LLC
111 Town Square Place, Suite 400
Jersey City, New Jersey 07310
Nicholas.Conlon@jtblawgroup.com

**To Defendants:**

David R. Golder
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
david.golder@jacksonlewis.com

31

Jed Charner
Jackson Lewis P.C.
11790 Sunrise Valley Drive, Suite 400
Reston, VA 20191
jed.charner@jacksonlewis.com

D.     This Agreement, upon its full execution, constitutes the entire Settlement between the Parties.  No representations, warranties, or inducements have been made to any Party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear her or its own costs.  Defendants' complete obligations are detailed herein, and the Parties agree and understand that there shall be no injunctive relief included as part of any term of the Settlement.

E.     This Agreement may not be changed, altered, or modified, except in writing signed by the Parties hereto and approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing used by the Parties hereto.

F.     If any provision of this Agreement or the application thereof is held invalid, such invalidation shall not affect other provisions or applications of this Agreement (except as otherwise expressly provided herein), and to this end the provisions of this Agreement are declared to be severable (except as otherwise provided).

G.     This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

H.     Named Plaintiff represents that she has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein of any claims covered by the Named Plaintiff's released claims.

I.      Because the members of the Class are so numerous, the Parties agree that it is impossible or impractical to have each Class Member sign this Agreement.  It is agreed that, for purposes of seeking approval of this class action Settlement, this Agreement may be executed on behalf of Class Members by Class Counsel.

J.      This Agreement shall become binding upon its execution by all of the undersigned, subject to Court approval as provided herein. This Agreement may be executed in one or more counterparts by facsimile, electronic signature, or email which for purposes of this agreement shall be accepted as an original.  All executed counterparts and each of them will be deemed to be one and the same instrument.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

K.      The rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of Connecticut, without regard to principles of conflict of laws.

L.      The Parties agree that all disputes pertaining to the implementation and enforcement of the terms of the Agreement shall be decided via arbitration conducted by Arbitrator Marc Isserles, and the decision of the Arbitrator shall be final and binding.  Except as provided in this Agreement or as the Parties may otherwise agree, the arbitration shall be conducted in accordance with the American Arbitration Association's Employment Arbitration Rules and Procedures. The Parties agree that they will initially split the costs, including arbitrator's fees, of any arbitration initiated regarding the implementation and enforcement of the terms of the Agreement.  However, the non-prevailing party in any such arbitration shall pay the prevailing party its reasonable attorneys' fees and costs associated with such arbitration proceedings, including the arbitrator's fees.

M.    Section titles or captions contained in the Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

N.    This Agreement shall be construed and interpreted as if all of its language were prepared jointly by the Parties.  No language in this Agreement shall be construed against a Party on the ground that such Party drafted or proposed that language.

O.    Each attorney signing below represents that he has been authorized to execute this Agreement on behalf of the attorney's respective client(s).  Class Counsel, on behalf of the Class and Collective, represents that, after consultation with and approval by the Named Plaintiff, as Class representative, Class Counsel is expressly authorized to take all appropriate action required or permitted to be taken pursuant to this Agreement to effect its terms, and also is expressly authorized to enter into any modifications or amendments to the Agreement that Class Counsel deems appropriate on behalf of the Class. Similarly, Defendants' Counsel represents that they are expressly authorized to take all appropriate action required or permitted to be taken by Defendants pursuant to the Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement that they deem appropriate on behalf of Defendants.

**IN WITNESS WHEREOF**, this Agreement is executed by the Parties and their duly authorized attorneys, as of the date set forth below.

**THIS SPACE INTENTIONALLY BLANK**

**WE AGREE TO ALL OF THE ABOVE TERMS.**

DATED: _____, 2025     **FOR HERSELF AND ON BEHALF OF THE CLASS AND COLLECTIVE:**

_____

**DOROTHEA CORNICK**

DATED: _____, 2025     _____

**NICHOLAS CONLON, CLASS COUNSEL**

DATED: _____, 2025     **FOR AWARE RECOVERY CARE, INC., AND AWARE RECOVERY CARE OF MASSACHUSETTS**

_____

**ROY SASENARAINE**

TITLE: <u>CHIEF EXECUTIVE OFFICER</u>

DATED: _____, 2025     _____

**DAVID GOLDER, DEFENDANTS' COUNSEL**

**WE AGREE TO ALL OF THE ABOVE TERMS.**

DATED: __07/30/2025__, 2025    **FOR HERSELF AND ON BEHALF OF THE**
                                        **CLASS AND COLLECTIVE:**

*Dorothea Cornick*
**DOROTHEA CORNICK**

DATED: __07/30/2025__, 2025

*Nicholas Conlon*
**NICHOLAS CONLON, CLASS COUNSEL**

DATED: _____, 2025    **FOR AWARE RECOVERY CARE, INC., AND**
                                        **AWARE RECOVERY CARE OF MASSACHUSETTS**

_____
**ROY SASENARAINE**

TITLE: CHIEF EXECUTIVE OFFICER_____

DATED: _____, 2025    _____
                                        **DAVID GOLDER, DEFENDANTS' COUNSEL**

**WE AGREE TO ALL OF THE ABOVE TERMS.**

DATED: _____, 2025         **FOR HERSELF AND ON BEHALF OF THE**
                                     **CLASS AND COLLECTIVE:**


                                     _____
                                     **DOROTHEA CORNICK**


DATED: _____, 2025         _____
                                     **NICHOLAS CONLON, CLASS COUNSEL**


DATED: 7/28/2025 _____, 2025        **FOR AWARE RECOVERY CARE, INC., AND**
                                     **AWARE RECOVERY CARE OF MASSACHUSETTS**

                                     *Roy Sasenaraine*
                                     _____
                                     **ROY SASENARAINE**

                                     TITLE: CHIEF EXECUTIVE OFFICER_____

                                     _____
DATED: August 27 _____, 2025
                                     **DAVID GOLDER, DEFENDANTS' COUNSEL**

35